<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT P. ANDREULA,<br><br>    *Plaintiff*,<br> v.<br><br>CAPITAL ONE FINANCIAL CORP., et al,<br><br>    *Defendants*. | **Civil Action No. 14-5276**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

  **THIS MATTER** comes before the Court on Defendant Capital One Financial Corp.'s ("Capital One") motion for summary judgment. Dkt. No. 25. Plaintiff Vincent Andreula worked for Capital One from February 2013 to May 2014. In this negligent misrepresentation case, Andreula claims that his Capital One supervisor told him during an interview that he could receive commission payments from his former job. After he was hired as an at-will employee, Capital One made him choose between the commissions and working at Capital One. When he chose to keep the commission, Capital One terminated his employment. Because Andreula's status as an at-will employee negated any reasonable reliance on the alleged misrepresentation at his interview, the motion is **GRANTED**.

**I. FACTS**

  In early 2013, Andreula worked as a securities broker at Primary Capital, LLC, an investment banking firm in New York.[1] He had several responsibilities there, including liquidating

---

[1] The following facts are taken from the parties' L.Civ.R. 56.1 statements of material facts, unless noted otherwise. Dkt. Nos. 25-2, 26-8.

1

low-priced securities, or "penny stocks." Primary Capital paid him a commission for providing the liquidation service.

On January 7, 2013, he applied for a business banker position at Capital One's New Jersey office. In an employment application, he indicated that he was looking for a job with a shorter commute and that he would not engage in other business besides Capital One. Kathryn Peters, a recruiter for Capital One, contacted him through LinkedIn to speak with him about opportunities at the company.

A few days later, he had an interview with Lisa Spadafino, a Market Sales Executive and Vice President. Spadafino would be his immediate supervisor if he got the job. During the interview, he told Spadafino that, if he was hired by Capital One, Primary Capital would continue to hold his securities licenses and pay him commission. Specifically, Andreula testified as follows:

> Q: And who brought it up?
> A: I did.
> Q: What did you say in bringing it up?
> A: Just told her if this works out I'm gonna be registered at Primary Capital and continue to receive commissions
> . . . .
> Q: So the words that you used were . . . you'd be registered at Primary Capital and continue to receive commissions?
> A: Yeah.
> Q: Okay. Did you say anything else?
> A: That was it.

Fox Cert. Ex. E ("Pl.'s Dep.") Tr. 245:17-246:8, Dkt. No. 25-4. Spadafino allegedly responded, "it is great that you'll receive two incomes." Id. Tr. 237:8-15; 246:9-25. Andreula asserts that he would not have taken the Capital One job if he had to give up his commission, but he does not point to evidence that he told Ms. Spadafino so. See id. Tr. 245:23-246:1.

Andreula then interviewed with Gregory Smith, a skip-level supervisor, and Chris Economides, a Market Credit Executive, but the license and commission issues were not discussed.

Andreula alleges, however, that he discussed the issues with Peters, the Capital One recruiter, at some point after the interview with Spadafino. Pl.'s Dep. Tr. 235:5-18.

On January 25, 2013, after conferring with Smith and Economides, Spadafino hired Andreula. Peters called him to offer the job, and he accepted. They did not discuss his licenses or commission. Peters sent him an offer letter that evening. The letter provided that Andreula's employment with Capital One was "at-will," and that "[y]ou or Capital One may terminate your employment at any time and for any reason. Capital One also reserves the right to alter or change the terms and conditions of your employment at any time and for any reason." Fox Cert. Ex. K ("Offer Letter") at 2. Andreula reviewed the offer letter when he received it and did not have any questions.

A few days later, on January 31st, Andreula signed a Confidentiality and Work Product Agreement ("CWP") Agreement. Fox Cert. Ex. L ("CWP Agreement") ¶ 7. The CWP Agreement reiterated his at-will status and Capital One's ability to terminate his employment "at any time and for any reason." Id.

Andreula started working at Capital One on February 11, 2013. Around April 2014, Smith viewed Andreula's LinkedIn profile and saw that it listed Primary Capital, not Capital One, as his employer. Wronko Cert. Ex. A ("Smith Dep.") Tr. 52:4-53:2. Concerned that Andreula was actively employed by Primary Capital, Smith called a meeting with him and Spadafino. At the meeting, Andreula confirmed that he was still receiving commissions from Primary Capital for referrals "based off of my book of business." Pl.'s Dep. Tr. 364:2-365:5. In other words, according to Andreula, he received a commission from Primary Capital any time one of his former clients referred new business to the company. Id. 365:6-13. He also stated that he referred investment bankers to Primary Capital, though he did not receive compensation for doing so. Id.

3

367:22-368:8.  Smith instructed Andreula to fill out a Conflict of Interest Determination form so his commission arrangement could be vetted by Associate Relations, a group that determines whether an employees' outside business activities create a potential conflict.  Andreula received training on the conflicts rules and approval process on three prior occasions, but did not report his commissions until Smith asked him to do so.

On May 5, 2014, Andreula told them that he had thus far received approximately $100,000 in commissions, and that he would continue to receive commissions through 2015.  Based on the amount of commissions Andreula was receiving, Smith suspected that he was still actively working for Primary Capital, and determined that Andreula's continued relationship with Primary Capital was a conflict of interest.

On May 7, 2014, Spadafino advised Andreula that his income from Primary Capital was a conflict of interest, and he had to give up any future commission in order to continue his employment at Capital One.  Andreula asked for time to think about his decision, and, on May 27, 2014, told Smith and Spadafino that he would not give up his commission.  As such, Capital One terminated his employment.

Andreula brought the instant law suit on July 24, 2014, alleging one count of negligent misrepresentation.  Compl., Dkt. No. 1-2.  On April 13, 2016, it filed this motion for summary judgment.

## II.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

**III. ANALYSIS**

The elements of a claim for negligent misrepresentation are "(1) an incorrect statement, (2) negligently made, (3) justifiably relied on, (4) resulting in economic loss." Scagnelli v. Schiavone, No. 09-3660, 2012 WL 3578163 (D.N.J. Aug. 20, 2012); see also H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983) ("An incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance."). Capital One challenges the first three elements. Because the Court finds that Andreula cannot prove justifiable reliance as a matter of law, it will only address that element.

Capital One argues that Andreula's reliance was not justified because he was an at-will employee and therefore was subject to termination or a change in employment policy at any time. Andreula agrees that his employment was at-will, but argues that his employment status is irrelevant to whether he was falsely induced to join Capital One. The Court agrees with Capital One.

At its core, the dispute is whether Andreula could reasonably believe he would not be fired for keeping his commission when he knew he was at-will, meaning he could be fired for any time for any reason. The New Jersey Supreme Court has not addressed this issue, but the parties each provide persuasive authority that supports their positions. Compare Worbetz v. Ward North

5

America, 54 Fed. App'x 526 (3d Cir. 2002) with McConkey v. Aon Corp., 354 N.J. Super. 25 (App. Div. 2002).[2]

In McConkey, a company executive misrepresented his company's future growth and likelihood of being sold, which induced the plaintiff to accept a job there only to be laid off seven months later when company was sold. The court rejected the defendants' argument that the plaintiff could not have reasonably relied the defendants' statements because he was an at-will employee:

> Defendants misapprehend the issue. [The plaintiff] did not treat [the executive's] representations as a guarantee of future employment, for he was aware that he was an at-will employee. He also never claimed that he thought the company would never be sold. Rather, his claim was that he met with [the executive] to get an accurate reflection of current facts concerning the status of the company in order to decide whether a position with [the company] was in his best interests.

Id. at 49. The court held plaintiff's reliance in such circumstance was not unreasonable. Id.

In Worbetz, however, the Third Circuit Court of Appeals held that the employee's at-will status was dispositive. There, the plaintiff claimed he was induced to work for the defendant by representations that the company had two years' worth of commission-based work for him, only to discover they had lost the contract with their main client. He signed two documents before his employment started that indicated he was an at-will employee. The Court held that, "[b]ecause Worbetz agreed to be employed 'at will' in documents he signed before and during the course of

---

[2] The reliance issues in Worbetz and McConkey arose from promissory estoppel and fraud claims, respectively. Andreula argues that Worbetz is distinguishable on that basis, but reliance is treated the same for negligent misrepresentation, promissory estoppel, and fraud. See Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc., 357 F. Supp. 2d 788, 800 (D.N.J. 2005) ("Indeed, reasonable reliance is an 'essential element' of both negligent misrepresentation and promissory estoppel."); Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) ("The element of reliance is the same for fraud and negligent misrepresentation.").

his employment, he cannot show reasonable reliance on a promise of employment on a commission basis for a two year term." Worbetz, 54 Fed. App'x at 532.

These cases can be reconciled. Worbetz involved an alleged promise that impacted the terms of employment. The plaintiff there attempted to hold his employer to a promise that he would work for two years on commission, even though those terms were contradicted by his at-will employment. The promise in McConkey is different. That promise involved the company's financial status, and had no impact on the plaintiff's actual terms of employment. As such, it was separate and distinct from the parties' employment contract. See Cioni v. Globe Specialty Metals, Inc., 618 F. App'x 42, 47 (3d Cir. 2015) (affirming dismissal of negligent misrepresentation claim where employer falsely promised to give stock options to prospective employee, and noting such misrepresentation is different from McConkey where "[t]he misrepresentations were apparently related to, but distinct from, the parties' expectations under the contract."). The distinction is subtle but significant. As the court in Worbetz suggested, a claim that an employer lied about a term of employment during negotiations does not fall under negligent misrepresentation's umbrella because it would "convert to tort all breach of contract claims alleging that one party gave incomplete information during the process of negotiating that contract." Id. at 532.

That is essentially what Andreula attempts to do here. Andreula believed in light of Spadafino's statement that Capital One could not fire him for receiving commissions from Primary Capital or force him to give up the commissions. And he believed that despite the fact that his at-will employment status meant that Capital One could do both. His claim, therefore, is that Spadafino's misrepresentation altered the terms of his employment, which makes Worbetz the closer analogue.

Moreover, there are no disputes of material fact about Andreula's at-will status. He admits that he received and reviewed the offer letter and signed the CWP Agreement. Both documents conspicuously and unambiguously explain that "Capital One is free to terminate your employment with Capital One at any time and for any reason." Nor does he argue that he did not understand the implications of his at-will employment. As such, when he received and signed these documents after his interview with Spadafino, he was on notice that Spadafino's statement may not have been accurate but did nothing to investigate the issue. Cf. Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 305-06 (D.N.J. 2009) ("A party reasonably relies on a misrepresentation where the 'facts to the contrary were not obvious or did not provide a warning,' or where the relying party did not reasonably 'pursue further investigation' that would have revealed 'the falsity of the representation.'") (quoting Nappe v. Anschelewitz, Barr, Ansell & Bonello, 189 N.J. Super. 347, 355 (App. Div. 1983)). Andreula was not justified in relying on Spadafino's statements in light of those documents. Koch Materials Co. v. Shore Slurry Seal, Inc., No. 01-2059, 2005 WL 147061, at *9-11 (D.N.J. Jan. 13, 2005) ("[G]ven the circumstances and the clear contractual language, Shore was not justified in relying on representations made by Koch. Thus, the Court will grant Koch's motion for summary judgment on the claim for negligent misrepresentation.").

In sum, the Court holds that summary judgment is appropriate because the alleged misrepresentation impacted the terms of Andreula's employment, and his at-will employment status made any reliance on such misrepresentation unreasonable as a matter of law.

## IV.   CONCLUSION

For the reasons set forth above, Capital One's motion for summary judgment is **GRANTED**. An appropriate Order accompanies this Opinion.

**Date: November 28, 2016**

**/s Madeline Cox Arleo**

                                                     **MADELINE COX ARLEO**
                                                     **United States District Judge**